CATTLEMENS TRUST CO. OF FT. WORTH v. WILLIS, District Judge, et al. (No. 8340.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 9, 1915. Rehearing Denied Nov. 13, 1915.)

1. COURTS ☞207—COURT OF CIVIL APPEALS —ISSUANCE OF PRROGATIVE WRIT—PROHIBITION.

Under Const. art. 5, § 6, providing for division of the state into supreme judicial districts, and establishment of a Court of Civil Appeals in each district, which shall have appellate jurisdiction extending to all civil cases of which the district courts and county courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1592, giving Courts of Civil Appeals the power to issue writs of mandamus and all other writs necessary to enforce their jurisdiction, the Court of Civil Appeals has power to issue a writ of prohibition to protect its jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ☞207; Prohibition, Cent. Dig. § 65.]

2. COURTS ☞207—COURT OF CIVIL APPEALS —ISSUANCE OF WRIT OF PROHIBITION.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1591, relating to judgments of the Court of Civil Appeals, a judgment of the Court of Civil Appeals, affirming a money judgment of the district court, with damages for delay, is the judgment of the appellate court, and not that of the district court, though it be remitted to the district court for enforcement; hence prohibition will lie to prevent another district court enjoining enforcement of the judgment.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ☞207; Prohibition, Cent. Dig. § 65.]

3. COURTS ☞207—ISSUANCE OF PROHIBITION —JURISDICTION OF COURT OF CIVIL APPEALS.

Where a judgment of one district court against a resident of another district, after being affirmed by the Court of Civil Appeals, was sought to be enjoined by a district court lying outside of the supreme judicial district over which the Court of Civil Appeals had jurisdiction, prohibition against the defendant and the judge of the district court in which injunction was sought may be issued by the Court of Civil Appeals; such defendant having been party to

the original suit, and both having appeared and answered.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ☞207; Prohibition, Cent. Dig. § 65.]

4. COURTS ☞207—COURT OF CIVIL APPEALS —ISSUANCE OF PROHIBITION.

In view of Const. art. 5, § 6, giving Courts of Civil Appeals power to issue all necessary writs, the Court of Civil Appeals of one district may issue a writ of prohibition against a district court of another district and parties residing in another district to prevent interference with its judgment.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ☞207; Prohibition, Cent. Dig. § 65.]

5. PROHIBITION ☞12—GROUNDS OF DEFENSE.

In view of Rev. St. 1911, arts. 4643, 4653, providing for the return of writs of injunction before the court where the action is pending, a writ of prohibition, issued to prevent one district court from interfering with the judgment of another district court, which had been affirmed by the Court of Civil Appeals, will not be denied on the ground that the court·in which injunction was sought would properly administer the law according to the facts.

[Ed. Note.—For other cases, see Prohibition, Cent. Dig. § 61; Dec. Dig. ☞12.]

Petition by the Cattlemens Trust Company of Ft. Worth for a writ of prohibition against Frank Willis, District Judge, and another. Writ issued.

A. H. Kirby, of Ft. Worth, for petitioner. J. W. Payne, of Ochiltree, Newton P. Willis, of Canadian, and George W. Steere, of Ft. Worth, for respondents.

CONNER, C. J. This is an application on the part of the Cattlemens Trust Company of Ft. Worth against J. M. Blassingame, of Ochiltree county, and against Hon. Frank Willis, judge of the Thirty-First judicial district, for a writ prohibiting the said Blassingame from further prosecuting and the said judge from a further hearing of a writ of injunction issued by order of said judge on September 1, 1915, restraining an execution sale of certain lands belonging to Blassingame situated in Ochiltree county. The application for the writ is based upon the following undisputed facts:

On June 15, 1914, the Cattlemens Trust Company recovered a judgment by default in the district court of Tarrant county against the defendant J. M. Blassingame for the sum of $869.40, being the principal, interest, and attorney's fees specified in a promissory note declared upon in that case. Blassingame, though duly served, made default, but later, on September 12, 1914, sued out a writ of error from said judgment to this court, at the time filing a supersedeas bond, with A. W. Thurman, S. C. Brillhart, Sharman Jines, and A. M. Jines as sureties. Blassingame, however, failed to file the record in this court, or otherwise prosecute his writ of error with effect, as required by the terms of his supersedeas bond, whereupon the Cattlemens Trust Company, pursuant to the terms of our statute on the subject, filed

its motion in this court praying for an affirmance of the judgment and a recovery of 10 per cent. damages for delay. In answer to the motion to affirm, Blassingame filed in this court a pleading to the effect that shortly prior to the institution of the suit in Tarrant county by the Cattlemens Trust Company he (Blassingame) had instituted a suit in Ochiltree county, where he resided, to cancel for fraud the note which was the foundation of the suit and judgment in Tarrant county; that the case in Ochiltree county had been tried upon the issues made by the pleadings in that case, and that he (Blassingame) had recovered a judgment canceling the note; that the Cattlemens Trust Company had duly prosecuted an appeal from the Ochiltree county judgment to the Court of Civil Appeals for the Seventh Supreme Judicial District, where it was alleged the appeal was then pending. The prayer was that the motion to affirm be dismissed, or in the alternative that this court postpone judgment on the motion until after disposition of the appeal from Ochiltree county by the Court of Civil Appeals for the Seventh Supreme Judicial District. After due consideration, we held, in effect, as will be seen from our published opinion (Blassingame v. Cattlemen's Trust Co., 174 S. W. 900), that the facts set up by Blassingame in answer to the motion constituted a good plea in abatement only, and not a good plea in bar of the action in Tarrant county, and that, Blassingame having failed, after due notice of the Tarrant county suit, to therein plead said matter of abatement, such matter could not be given effect for the first time in this court, and that the same would not constitute cause to refuse the prayer of the motion to affirm, or to grant Blassingame's prayer for a postponement of our action until after the determination of the appeal from the district court of Ochiltree county. The motion to affirm was accordingly, on, to wit, January 23, 1915, granted by us, and this court duly entered its judgment in favor of the Cattlemens Trust Company for the amount adjudged in its favor below, together with the further sum of 10 per cent. thereon as damages for delay and all costs of the proceedings, against Blassingame and the said sureties upon his supersedeas bond. From this judgment of affirmance Blassingame later sued out a writ of error to our Supreme Court, but the writ was dismissed by that court on the ground of a want of jurisdiction. Yet later, on, to wit, the 23d day of June, 1915, the mandate of this court was regularly issued and transmitted to the district court of Tarrant county, directing the enforcement of our said judgment. The district court of Tarrant county thereupon regularly issued execution, directed to the sheriff of Ochiltree county, commanding him to make the sums of money adjudged by this court, which execution was levied upon lands belonging to Blassingame situated in Ochiltree county, and such lands were advertised for sale on September 2, 1915.

Thereafter, to wit, on or about August 1, 1915, Blassingame presented to the presiding judge of the district court of Tarrant county a petition praying that said judgment in said court and said execution sale be enjoined. In this petition Blassingame, in substance, set up the facts, so far as necessary to here state, as we have hereinbefore recited them, asserting the superiority of the judgment in the district court of Ochiltree county, and further averred that he had been misinformed as to his right or duty to plead the institution of the prior suit in Ochiltree county in the suit in Tarrant county, and that he had omitted to plead such matter in abatement upon the advice of his attorneys. The district judge of Tarrant county, to whom the petition was presented, indorsed his fiat thereon, commanding the Cattlemens Trust Company to appear before him on August 11, 1915, and show cause why the temporary writ of injunction prayed for should not be granted. The Cattlemens Trust Company appeared, and on a hearing of the motion, on, to wit, the 26th day of August, 1915, Hon. Ben M. Terrell, judge of said district court of Tarrant county, entered his order stating that:

"The court, having heard and fully considered said application, is of opinion that same should be in all things denied and refused; and it is accordingly so ordered, adjudged, and decreed."

It does not appear that any appeal was taken from the order last named. The next step on the part of Blassingame was the presentation by him on the 1st day of September, 1915, of a petition to Hon. Frank Willis, respondent herein, judge of the district court of the Thirty-First judicial district, seeking to enjoin the threatened execution sale hereinbefore mentioned and the said judgment upon which it rested. The petition set up the institution of the conflicting judgments, as hereinbefore recited, and the fact of the appeal pending in the Seventh supreme judicial district, omitting any reference to the proceeding in this court which resulted in the judgment of affirmance we have described, and the prayer was that the sheriff of Ochiltree county be "restrained and enjoined from further executing or enforcing said judgment of Tarrant county district court until the decision of the honorable Court of Civil Appeals of Amarillo in this case, and that on final hearing hereof said judgment be made perpetual, and for general and special legal and equitable relief." Hon. Frank Willis indorsed his order upon the petition granting the issuance of the temporary writ of injunction as prayed for, and it is to further proceedings under the writ of injunction issued pursuant to said order that the relator, the Cattlemens Trust Company, now interposes its petition for a writ of prohibition, as stated in the begin-

ning of this opinion. The respondents Blassingame and Willis, in obedience to the notice of this court to show cause why the writ should not issue, have appeared and filed written answers. There is no denial of the material facts stated; the contention of respondents constituting in its essence a mere denial, for various reasons, of a power in this court to issue a writ of prohibition such as sought in this case.

[1] While it seems to be true, as respondents insist, that no Court of Civil Appeals in Texas has ever issued such a writ, yet we have no doubt of the power of such court to do so in a proper case. Section 6, article 5, of our Constitution, after providing for a division of Texas into supreme judicial districts, and for the establishment of a Court of Civil Appeals in each of said districts, declares, among other things, that such courts "shall have appellate jurisdiction coextensive with the limits of their respective districts, which shall extend to all civil cases of which the district courts or county courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." Said section of the Constitution further specially provides that said Courts of Civil Appeals "shall have such other jurisdiction, original and appellate, as may be prescribed by law." Later the Legislature, in defining the jurisdiction of the Court of Civil Appeals, among other things, enacted that:

"The said courts and the judges thereof shall have the power to issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts."

See Vernon's Sayles' Texas Civil Statutes, article 1592.

Clearly the legislative act quoted was authorized by the terms of the Constitution also quoted, and has all the force that could be given to it, had the same been specifically embodied in the Constitution itself. So that it seems apparent to us that there is no force in the contention that we are without constitutional power to issue a writ of prohibition. And, as we think, in a proper case it is wholly immaterial whether the jurisdiction exercised by a Court of Civil Appeals in the issuance of such a writ be classified as "original" or as "appellate." Whatever be the proper classification of the power, it is clear that this court and all other Courts of Civil Appeals have been expressly given jurisdiction to issue any writ known to the law found to be necessary to enforce the jurisdiction of the court. The question therefore is: Does the said petition of respondent Blassingame, and the said action thereon of the respondent Hon. Frank Willis, constitute attacks upon the jurisdiction of this court? We think they do.

[2] As we construe the judgment enjoined, it is the judgment of this court, and not that of the district court, as respondents contend, and as was incorrectly represented in the petition for the injunction. It is so, as we think, in form and in substance. The judgment decrees the payment by the respondent Blassingame and the sureties on his supersedeas bond, not only of the amount adjudged against Blassingame below, but also of the certain sum of 10 per cent. of the judgment of the district court as damages, besides the costs of this court, for all of which it is directed that execution may issue. The fact that under the statute the judgment is certified to the court below for observance, and that the execution enjoined was issued out of that court, instead of from this court direct, does not alter the character of the judgment, or change the basis of its legal effect. Its vital force has its source in the power vested in this court and in issuing the execution the lower court only acted in a ministerial capacity. As to this it had no discretion, but was required to obey the mandate of its superior in authority. Burck v. Burroughs, 64 Tex. 445; Moore v. Chamberlain, 152 S. W. 195. Such judgment, too, perforce of the statutes and decisions of this state was final (Vernon's Sayles' Texas Civil Statutes, article 1591; Cole v. State [Sup.] 170 S. W. 1036; Gray v. Eleazer, 43 Tex. Civ. App. 417, 94 S. W. 911), and a writ as here sought for restraining an unauthorized interference with a final judgment of this court must, in its very nature, constitute an aid to our jurisdiction.

It is doubtless true that in certain exceptional cases a court of equity would entertain an action in the nature of an original suit to restrain a judgment of a trial court, even after affirmance, as, for instance, upon proper allegations of subsequently discovered fraud or perjury in its procurement. But here we have no such state of facts presented. The material facts, in substance, are those that might have been presented in the district court of Tarrant county, which rendered the judgment by default, and which were later in fact presented to this court, as before stated, in opposition to the motion to affirm on certificate. If, after a litigant has had his day in court and exhausted his legal remedies in both the trial court and on appeal, he can avoid the orderly effect and operation of the final decree against him by invoking the aid of other and inferior courts on the same state of facts, then indeed it would be idle for a court of final jurisdiction to attempt an exercise of its power. Such a construction of the law would deprive this court of all real power, contrary to the manifest purpose of the Constitution and Legislature in declaring that our judgments in cases such as the one before us should be final. See McCrimmin v. Cooper, 37 Tex. 423; Kendall v. Mather, 48 Tex. 585. We think it plain, therefore, that the writ of injunction issued out of the district court of the Thirty-First judicial district constitutes an attack upon the jurisdiction of this court, and that

as against any objections thus far noticed the writ of prohibition herein sought will lie to restrain the district court of Ochiltree county from interpreting our said judgment or from interfering with its proper execution. See Hovey v. Shepherd, 105 Tex. 237, 147 S. W. 224; State v. Spokane Co. Super. Ct., 8 Wash. 591, 36 Pac. 443; State v. Whitney, 66 Fla. 24, 63 South. 299; 32 Cyc. 609, text (e); State v. Drew, 38 La. Ann. 274; In re State, 18 La. Ann. 102.

[3] It is further insisted, however, that inasmuch as Ochiltree county, where the respondent Blassingame resides and where the land levied upon is situated, and the Thirty-First judicial district, are beyond the territorial limits of this supreme judicial district, we are for this, if for no other, reason without power to issue the writ prayed for. But if otherwise authorized to issue the writ, we do not think this contention is maintainable. The writ sought by relator is in character very similar to the writ of injunction. As to the respondent Blassingame the very same result is to be brought about. As to him, at least, the only difference is in name. As against the other respondent, Hon. Frank Willis, the writ is sought and operative only as the judicial officer at this time authorized to perform the functions of the district court of Ochiltree county. As against him the real purpose of the writ sought is to restrain the threatened action of that court, whosoever may happen to be its presiding judge. Such writs were designated in the common law as writs of prohibition, as contradistinguished from writs of injunction, and our authorities have adhered to that nomenclature. But in nature and judicial results obtainable there can be but little, if any, difference between writs of injunction and writs of prohibition. This being true, we see no reason why we should not, in this case, apply the familiar rule relating to writs of injunction, to wit, that an injunction operates against all persons, their agents and attorneys, who were parties to the cause, whether they reside within or without the territorial jurisdiction of the court awarding the writ. See Alexander v. Tolleston Club, 110 Ill. 65; State v. Fredlock, 52 W. Va. 232, 43 S. E. 153, 94 Am. St. Rep. 932; Frank v. Peyton, 82 Ky. 150; Jennings Bros. v. Beale, 158 Pa. 283, 27 Atl. 948; 22 Cyc. 785. The respondent Blassingame was a party to the judgment that he now seeks to enjoin. He, as also the respondent Willis, voluntarily appeared before this court and answered in this proceeding, thus submitting themselves to our jurisdiction, and hence, as we think, cannot be indulged in now saying that we are without power to make and enforce such orders as the other facts before us authorize.

[4] Moreover, for a yet better reason, perhaps, we are of opinion that in the respect now under consideration our power is not limited to the territorial limits of our judicial district. While the Constitution already quoted in general terms limits our appellate jurisdiction to the territorial limits of this district, it is apparent from the whole, when considered in connection with the legislative grants of power, that we have full authority to conclude litigation and render final judgments in causes, such as here in question, arising in our judicial district and properly brought before us. Such power, in accord with the very familiar rule of construction, carries with it by necessary implication the power to issue such process as may be essential to the maintenance of the integrity and vital force of our final decrees. Otherwise the supremacy evidently intended by the Constitution is meaningless. It follows, if necessary to the end, that such process, in the absence of any specific inhibition, will be operative anywhere within the limits of the sovereign power by virtue of which this court exists. Any doubt of this that can arise from a construction of the Constitution alone is dissipated by the statute quoted and already referred to several times, which gives to this court power to issue the extraordinary writs therein named. As stated, the enactment of this statute was clearly authorized by section 6 of article 5 of the Constitution, and the statute expressly authorizes this court to issue all writs necessary to enforce our jurisdiction, whether in doing so we are in the exercise of original or appellate functions, and without any territorial limitation as to the operation of the writs when issued. It follows, we think, that such writs, when issued in a proper case, must, except perhaps in cases having no application here, be obeyed by all persons and courts of inferior jurisdiction or authority in this state.

[5] Several other objections have been urged by the respondents, but they are, we think, of minor importance, easily answered, and hardly require discussion. We should however, perhaps briefly notice the further insistence that the proper remedy of the relator was to present its complaint in the district court of the Thirty-First judicial district; the contention being that it must be assumed that the court issuing the injunction would properly administer the law upon the facts. As to this contention, it is to be observed that, even if the judgment enjoined should be construed as a judgment of the district court of Tarrant county, as respondents insist, and if the district judge of the Thirty-First judicial district had any authority at all to direct the issuance of the writ, it was returnable to and triable before the district judge rendering the judgment. See Revised Statutes, articles 4643 and 4653. In such cases the law evidently contemplates that the court rendering the judgment shall be the judge of its validity. The reason for this rule is of special force, we think, in

cases where the judgment attacked is that of this court. In certain cases and under certain regulations, that need not be here specified, our Constitution and laws have vested in the Supreme Court the power to modify or annul the decrees of this court. The grant of such power in the Supreme Court necessarily excludes all authority from courts of inferior jurisdiction to do so. In the case in which the enjoined judgment was rendered, the Supreme Court itself formally declared that it was without power to revise the judgment. How, then, is it to be supposed that the district court of the Thirty-First judicial district, or the judge thereof, has power to do so? In such cases the remedies urged by respondents have no application. See State v. Spokane Co. Sup. Ct., 8 Wash. 591, 36 Pac. 443; State v. Superior Court, 5 Wash. 518, 32 Pac. 457, 771; Kirby v. Superior Court, 68 Cal. 604, 10 Pac. 119; High, Extr. Rem. § 781; State v. Elkin, 130 Mo. 90, 30 S. W. 337, 31 S. W. 1037.

We conclude that relator, the Cattlemens Trust Company, is entitled to the relief specified in its complaint, and that the writ of prohibition should issue as prayed for; and it is so adjudged.