UNITED STATES, EX REL., v. COUNCIL OF KEOKUK.

1. An act of Congress passed on the admission of Iowa into the Union in 1845, having provided that the laws of the United States not locally inapplicable should have the same effect within that State as elsewhere —the "Process Act" of May 19th, 1828,—by which the modes and forms of process in common law suits were made the same in the Circuit Courts of the United States as those used in the highest State court of original jurisdiction—became applicable to the Federal courts of Iowa.
2. Accordingly, mandamus being, in the Supreme Court of the State, the remedy to compel a municipal corporation to levy a tax to pay a judg- ·ment of which a creditor has no means of obtaining payment, a party having a judgment in a Circuit Court, is entitled to the same remedy in that court.
3. An injunction by a State court against such a levy is inoperative against a mandamus from the Federal court ordering it, though issuing subse- quently to the injunction. *Riggs* v. *Johnson County (supra,* 166) af- firmed.

ERROR to the Circuit Court for the Northern District of Illinois.

The case was submitted by

*Mr. Howell, for the plaintiff in error, and by Messrs. Strong and Craig, contra.*

Mr. Justice CLIFFORD stated the case and delivered the opinion of the court.

The General Assembly of the State of Iowa, by a law passed January 29th, 1857, authorized the corporation defendants to levy a direct tax of one hundred and fifty thousand dollars for the benefit of the Keokuk, Mount Pleasant, and Musca- tine Railroad Company, and to issue the bonds of the city for the amount, payable in one, two, and three years, with interest coupons annexed, at the rate not exceeding ten per cent. per annum.* They voted the tax and issued the bonds, and the relator became the *bonâ fide* holder for value of twenty-five of the bonds before their maturity. Payment being refused after their maturity, he brought suit on the same in the Circuit Court of the United States for the Dis-

* Session Laws 1857, 402.

trict of Iowa, against the defendants, but the judges of the court being interested in the matters involved, the cause was duly transferred to the Circuit Court of the United States for the Northern District of Illinois, as appears by the record.

Judgment was rendered in favor of the relator in the latter court October 19th, 1864, for the sum of thirty-six thousand five hundred and forty-nine dollars, and costs of suit. Defendants having no corporate property, and the relator being without any other remedy, applied to the Circuit Court where the judgment was rendered for a mandamus to compel the payment. Pursuant to the application, the Circuit Court granted the alternative writ, commanding the defendants to make an appropriation to pay the amount, or show cause on the return day of the writ why they should not obey its commands.

In their return the defendants admit that the General Assembly passed the law, that they issued the bonds, and that the relator recovered judgment as alleged, but aver that on the ninth day of October, 1863, before the relator recovered his judgment, they were enjoined by the State court from levying any general or special tax upon the taxable property within the limits of the defendant corporation for the payment of the bonds of the relator—principal or interest—and that they cannot pay the judgment without being guilty of contempt for violating that injunction. Other defences were set up in the return, but it is not necessary to notice any other, as they were not sustained by the court.

Relator demurred to every defence set up in the return. Reference, however, will only be made to the demurrer to the defence founded on the injunction granted by the State court. Causes of demurrer shown were as follows: (1) That the writ does not enjoin the defendants from paying over the taxes already received, but only enjoins the future collection of such taxes. (2) That the relator was not a party to those proceedings, and that the State court had no jurisdiction for the want of proper parties. (3) That the State court cannot oust the Circuit Court of its jurisdiction to enforce its own judgments.

Parties were heard and the court overruled the demurrer, holding that the injunction of the State court prevented the Circuit Court from issuing a peremptory mandamus. Standing upon his demurrer, the relator excepted to the ruling of the court and sued out this writ of error.

Principal question in the case is whether the injunction of the State court had the effect to take away the jurisdiction from the Circuit Court to issue the writ of mandamus as prayed by the relator. Transferred, as the cause had been, from the Circuit Court for the District of Iowa, it is quite clear that power of the court to which it was transferred was exactly the same in respect to the controversy as belonged to the tribunal where it was commenced.

Created, as the defendant corporation was, by the law passed by the General Assembly of Iowa, and being a municipal corporation in that State, it is quite clear that all the rights, duties and obligations of the corporation must be ascertained and defined by the laws of that State.

Modes of process and forms of process in that State, unless changed by rules of court, are the same in suits at common law as were used in the highest court of original jurisdiction in the State at the time the Federal courts were organized in that State. State processes and modes of process were first adopted by the .act of the twenty-ninth of September, 1789; and by the act of the eighth of May, 1792, those regulations were made permanent, but they were confined in their application to the old States.* Subsequent enactment extended those regulations to the new States admitted prior to the first day of August, 1842, when the last general provision upon the subject was passed.†

Iowa was admitted into the Union on an equal footing with the original States in all respects, and by the supplemental act passed on the same day, it is provided that the laws of the United States, which are not locally inapplicable, shall have the same force and effect within that State as elsewhere within the United States.‡ Legal effect of that pro-

---

* 1 Stat. at La 'ge, 93–276.    † 4 Id. 274; 5 Id. 499.    ‡ 5 Id. 742–789.

vision was, that the Process Act of the nineteenth of May, 1828, became applicable in the Federal courts of that State.*

Where the debt of a municipal corporation has been reduced to judgment, and the judgment creditor has no other means to enforce the payment, the remedy in the Supreme Court of the State is mandamus to compel the proper officers of the municipality to levy and collect a tax for that purpose.†

By virtue of the Process Acts the relator is undoubtedly entitled to the same remedy in the Circuit Court for that district, unless the power of the court to issue the writ is taken away or perpetually suspended by the injunction issued by the State court. Discussion of that question is unnecessary, as this court decided, at the present term, in the case of *Riggs* v. *Johnson County*, that a State court cannot enjoin the process of the Federal courts.‡

Orders for an injunction issued by State court are as inoperative upon the process of the Circuit Court of that district as they would be if directed to the process of a Circuit Court in any other district of the United States, because the State and Federal courts, in their sphere of action, are independent of any such control.

Judgment REVERSED and the cause remanded, with directions to sustain the demurrer of the relator, and for further proceedings in conformity to the opinion of the court.

Mr. Justice MILLER did not sit in this case.

---

\* 4 Stat at Large, 278.

† *Coy* v. *City Council of Lyons*, 17 Iowa, 1; *Dox* v. *Johnson*, 12 Id 237; *Clark* v. *City of Davenport*, 12 Id. 335; Code, § 2179; Revision, 3761.

‡ *Duncan* v. *Darst*, 1 Howard, 306; *McKim* v. *Voorhies*, 7 Cranch, 281; *Diggs et al.* v. *Wolcott*, 4 Id. 179.