William Gregg **BLANCHARD**, Appellant,

v.

**COMMONWEALTH OIL COMPANY,** Appellee.

No. 18927.

United States Court of Appeals Fifth Circuit.

Sept. 1, 1961.

**836**

Wm. W. Beuhler, San Antonio, Tex., Charles Hancock, William B. Dazey, Houston, Tex., for appellant.

Thad Grundy, Houston, Tex., Thomas H. Anderson, Hutcheson, Taliaferro & Hutcheson, Houston, Tex., Anderson & Nadeau, Miami, Fla., for appellee, Commonwealth Oil Co.

Before HUTCHESON, RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a decision granting the defendant's motion to dismiss on the ground that a former action in a Florida state court is res judicata. The merits of the appeal may not be reached, however, until several preliminary matters are ruled on.

**I.**

The appellee claims that the notice of appeal was not filed within thirty days from the entry of judgment as required by Rule 73(a) Federal Rules of Civil Procedure, 28 U.S.C.A., and that therefore the appeal should be dismissed. The question is whether a memorandum decision filed on November 25, 1960, or a later formal order of dismissal filed December 13, 1960, is to be considered the "entry of the judgment" as used in Rule 73(a).

If the former, the notice of appeal was not filed within the required thirty days.

Rule 58 with respect to entry of judgment provides in part that: "When the court directs * * * that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction * * *. The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry." In addition, Local Rule 24 of the United States District Court for the Southern District of Texas provides in part as follows: "(c) The clerk shall also keep a motion docket, upon which shall be noted all motions, etc., and all proceedings taken in reference thereto * * *. (d) Upon the disposition by the court of any such motions, etc., the clerk shall enter a notation of such disposition on the motion docket * * *."

On November 25, 1960, the district court filed what it called a "Memorandum of Court's Decision," the first sentence of which read: "The motion of the defendant to dismiss on the basis of res judicata is granted." There followed several paragraphs briefly stating the reasons for that ruling. The memorandum concluded: "Clerk will furnish counsel with a copy of this memorandum. Counsel for the defendant will prepare and present an order dismissing for res judicata." The Clerk's docket entry read: "11–25–60 (BCC) Memorandum, granting Defendant's Motion to Dismiss, filed. Counsel notified by mailing copies. Order to be presented."

On December 13, 1960, the district court filed what purports to be a formal judgment in which it "Ordered, Adjudged and Decreed that the second amended motion of defendant to dismiss the complaint be, and the same hereby is, granted on the ground of *res judicata*, and that the complaint in this cause be, and the same hereby is, dismissed." The Clerk's docket entry read: "12–13–60 (BBC) Order of Dismissal filed and entered." On January 12, 1961, Blanchard filed his notice of appeal.

In a case very similar to this, the Supreme Court recently considered the construction of the Rules with respect to the exact time of the "entry of judgment." United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 78 S.Ct. 674, 675, 2 L.Ed.2d 721. The Court pointed out that under the Federal Rules no formal order or words are needed to constitute a judgment, citing United States v. Hark, 1944, 320 U.S. 531, 534, 64 S.Ct. 359, 88 L.Ed. 290; and pointed out that even an "opinion may embody a final decision." In such a case, "the later filing and entry of a more formal judgment could not constitute a second final judgment in the case nor extend the time to appeal." 356 U.S. at pages 232–33, 78 S.Ct. at page 678. Whether an "opinion" does embody a final decision "depends upon whether the judge has or has not clearly declared his intention in this respect in his opinion." And "it is necessary to determine whether the language of the opinion embodies the essential elements of a judgment * * * and clearly evidences the judge's intention that it shall be his final act in the case." Id., 356 U.S. at page 232, 78 S.Ct. at page 678.[1]

There can be little question but that the memorandum opinion in this case filed on November 25, 1960 contains the necessary language to embody the essential elements of a judgment. For it clearly states that the motion to dismiss is granted and gives the grounds in detail. It does not appear, however, that the opinion evidences the Judge's intention that it be his final act in the case. For the final sentence of the opinion instructs counsel for the defendant to prepare an order dismissing the cause.[2] The mere fact that the clerk entered a notation on the docket is not conclusive on whether he was entering a judgment in accord with Rule 58, since the disposal of the motion had to be noted under the court's Local Rule 24. Further, the docket notation itself indicates the nonfinal nature of the entry by concluding: "Order to be presented."

By contrast, the language of the formal order filed on December 13, 1960, followed by the docket notation "Order of Dismissal filed and entered," indicates not only that the court considered this order to be its final act in the case but also that the opinion of November 25 was only in anticipation of this final order.

■■ The Federal Rules are not intended to create procedural traps for the parties, forcing them to file premature appeals whenever some slight doubt arises as to the propriety of the court's way of entering judgment. With the intentions of the court as clear as they are in this case, we hold that judgment was not entered until December 13, 1960, and that the appeal was timely.

## II.

■ Mr. Blanchard died pending this appeal. There has been and can be no serious objection to the admission of Blanchard's heirs[3] as parties to this appeal and its revivor in their name as provided for by Fifth Circuit Rule 19, 28 U.S.C.A., and it is so ordered.

## III.

The present litigation is preceded by 20 years of dealings and litigation over the oil and exploration rights to 7 million acres of land originally leased by William G. Blanchard from the State of Florida. The lease was granted to Blanchard on October 4, 1941, and is known as the Blanchard Concession. Blanchard assigned a ¾ undivided interest to one Scranton who was to carry out the exploration annd development of the

1. See also Erstling v. Southern Bell Tel. & Tel. Co., 5 Cir., 1958, 255 F.2d 93; Carter v. Campbell, 5 Cir., 1960, 285 F. 2d 68.

2. Compare this with the finality of language in Repan v. American President Lines, 2 Cir., 1957, 243 F.2d 876; Nichols-Morris Corp. v. Morris, 2 Cir., 1959, 272 F.2d 586.

3. The court is advised that the heirs of Mr. Blanchard are William G. Blanchard, Jr., Marian Blair Blanchard and Marian Alice Murray, and that there is no administration of his estate.

Concession. Only a portion of the remaining ¼ interest in Blanchard is the subject of the present suit.

In 1943 oil was first discovered in other parts of Florida, adding immediate speculative value to the Blanchard Concession. There followed a number of suits wherein roughly 75% of Blanchard's remaining interest in the land was wrested away. One such suit concluded by decreeing undivided interests in three groups represented by J. L. McCord, Frank J. Pepper and William Blanchard. There were, however, several suits still pending. To expedite and co-ordinate the further development of the Concession, all the parties claiming an interest in the land got together to work out a settlement. The result was to form a corporation known as the Florida Exploration Company to whom all the parties conveyed their interests in the Concession in exchange for stock. A Settlement Agreement embodied the terms and provided for the distribution of the stock. One of the terms stated:

"5. It is understood and agreed that the by-laws of the corporation shall contain a provision that the Board of Directors shall consist of six (6) persons, three (3) of whom shall be McCord, Pepper and Anderson representing the interests of the McCord-Pepper group and three (3) of whom shall be Blanchard, Taylor and Hall representing the Blanchard interests, and that this provision shall not be repealed or modified in any way for a period of twenty-five (25) years."

Releases of all outstanding claims were signed and the corporation formed. A stockholder agreement repeated the substance of the Settlement Agreement and was entered in the minutes of the corporation. There then began the battle for control of the Florida Exploration Company. The Pepper-McCord interests, stymied on the Board of Directors, conveyed their interests to the Commonwealth Oil Company, appellee in this action, who then became the majority stockholder in the Florida Exploration Company with 72% of the stock. Commonwealth Oil Company then sought a merger of itself with the Florida Exploration Company wherein the Blanchard interests would be reduced to a small interest in the resulting corporation and would, of course, lose the deadlock on the Board of Directors assured to them by the earlier agreements.

From the proposed merger there stated a second round of litigation which resulted in the present suit, among others. In 1953 Blanchard filed suit in the Circuit Court of Dade County, Florida, on behalf of himself and all other stockholders similarly situated, declaring the merger a violation of the Settlement and stockholder Agreements creating the Florida Exploration Company and asking for an injunction. The injunction was denied. Blanchard then attempted to get the suit dismissed without prejudice, apparently with the intention of pursuing further remedies in the federal court. The dismissal was apparently authorized on appeal, Blanchard v. Commonwealth Oil Co., Fla., 72 So.2d 664, but in the trial court on remand dismissal was denied. See Ermentrout v. Commonwealth Oil Co., 5 Cir., 1955, 220 F.2d 527, 529, note 3. In any case, since the merger had been completed, Blanchard filed an amended complaint asking that the merger be voided and Commonwealth be enjoined from disposing of the assets of the Florida Exploration Company. In the alternative, he prayed that the conveyances to and organization of Florida Exploration Company be declared null and void on the ground of failure of consideration due to breach of the Settlement and stockholder Agreements and that the assets be distributed to the parties in accordance with their holdings prior to its creation. A second suit was filed in the United States District Court for the Southern District of Florida asking for the same relief, but was dismissed on appeal on the ground of lack of diversity of citizenship after realignment of the parties. Ermentrout v. Commonwealth Oil Co., 5 Cir., 1955, 220 F.2d 527. In the state court proceedings the injunction was denied and the bill dis-

missed. The Florida Supreme Court, however, reversed and ordered that the merger be enjoined. Blanchard v. Commonwealth Oil Co., Fla.1956, 91 So.2d 803.

Thereafter, in August of 1957 the present suit was filed in the United States District Court for the Southern District of Texas by Blanchard, then a citizen of California, asking damages for Commonwealth's tortious breach of the Settlement and stockholder Agreements. Before this suit had progressed, a supplemental bill was filed in the Florida State Court suit asking that Blanchard be enjoined from further prosecuting the present suit. On December 21, 1957, a preliminary injunction was issued by the Florida court stating:

"* * * it appearing to the Court that William Gregg Blanchard filed this action long before the institution by him of the action in the Federal District Court for the Southern District of Texas, and it further appearing that the issues involved are substantially identical, and it further appearing that the origin of the controversy, the properties involved, and all material witnesses are * * * residents of the State of Florida, and that Florida Exploration Company * * * is domiciled in the State of Florida and is an indispensible party to any of such proceedings, and after argument of counsel, and the Court being fully advised in the premises, it is upon consideration [ordered that Blanchard be enjoined from further prosecuting the Texas suit]."

The injunction was made permanent on September 19, 1958. The court below did not consider the Florida injunction and on December 13, 1960 dismissed the complaint on the ground of res judicata. The appellee argues on appeal that the district court should have recognized the Florida injunction and dismissed the case on that ground.

■■ It has long been settled that state courts may not enjoin proceedings in federal courts once jurisdiction has properly attached. United States v. Council of Keokuk, 1867, 73 U.S. 514, 6 Wall. 514, 18 L.Ed. 933. This is because the two court systems are independent in a manner similar to the court systems of two separate states. Nevertheless, under the proper equitable circumstances the *parties* to a suit in another state or in the federal courts may be enjoined from continuing to prosecute. Although the court need not heed such an injunction where jurisdiction has properly attached, Rader v. Baltimore & O. R. Co., 7 Cir., 1940, 108 F.2d 980, it may recognize the order of another court as a matter of comity and terminate the proceedings or stay them for the duration of the injunction. See Annot. 74 A.L.R.2d 828 (1960). Where the two courts involved are a state and a federal court, special attention should be given to such an anti-suit injunction. Because these two courts often have concurrent territorial jurisdiction, contempt proceedings on the state court injunction might follow the federal court's decision to proceed, and interfere with the orderly disposition of the case. Further, when the federal court is hearing a diversity case on a question of state law of the state issuing the injunction, as opposed to the situation where it is entertaining a suit on a federal cause of action, see Baltimore & O. R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, it is sitting as another state court and should be especially cognizant of state interests and policy. See Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Moreover ,p hteSur 82 L.Ed. 1188. Moreover, the Supreme Court has often stated that, where possible, an unseemly conflict between the state and federal system should be avoided. See Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. It would surely create just such a conflict for the federal courts to ignore a state court antisuit injunction asserting a valid interest of that court.

■ There is one further consideration in this case tending towards recog-

nition of the state court injunction. Although Blanchard was clearly before the court when the injunction was issued, he chose not to appeal and have it tested in the Florida courts. Instead he ignored it and continued with this suit. His heirs now come before us and ask us to ignore it, or, if not to ignore it, to question its validity and, in effect, give them the benefit of the appeal which Blanchard failed to take in the Florida courts. We do not feel that the federal courts should be a party to the ignoring of a state court injunction if the grounds assert a valid state court interest and are not clearly insufficient. We should, under such circumstances, recognize the Florida injunction as a matter of comity.

■■ Blanchard contends on appeal that this suit is in no way similar to the Florida stockholder's action, which claim, if true, would seriously affect the validity of the Florida injunction. Blanchard claims that he is suing here as an individual on a cause of action arising from Commonwealth's wrongful dealing and expropriation of Blanchard's property placed in trust under the administration of the Florida Exploration Company. Blanchard cites the Settlement Agreement in his complaint as the original trust agreement. There is no language of an express trust in the Settlement Agreement. On its face it cannot be treated as anything other than a promoters' agreement, whereby the parties agree to organize a corporation for a given purpose and place property in the corporation in exchange for stock. It is settled law that promoters bear to the corporation and to their fellow promoters a position of trust and a duty to deal in good faith. See 13 Am.Jur. Corporations, § 98. Breach of such an agreement can give rise to a cause of action governed by the general principles of contract law. 13 Am.Jur., Corporations, § 127. See also A. J. Cranor Co. v. Miller, 1906, 147 Ala. 268, 41 So. 578. Whatever rights Blanchard might have under the Settlement Agreement, however, none of the parties to that agreement are before this Court and Commonwealth is in no way privy to those parties. Upon acquiring the stock of the Florida Exploration Company, Commonwealth did no more than accept the rights and duties of stockholders under Florida Exploration's charter and bylaws and the corporate laws of Florida. Therefore, Blanchard asserts no individual claim (other than as a stockholder of Florida Exploration Company) against Commonwealth cognizable in this Court.

■ Having exchanged his property for stock in the Florida Exploration Company, Blanchard lost all future rights as the holder of legal title to the property in exchange for his rights as a stockholder. See 13 Am.Jur. Corporations, § 6. As such he has rights against his fellow stockholder, Commonwealth, the majority stockholder in Florida Exploration Company, since Commonwealth owed to the minority stockholders the duty to act in good faith—neither to cause the corporation to act ultra vires or to breach valid stockholder agreements to the detriment of the minority shareholders. See 18 C.J.S. Corporations, §§ 497, 533. This, however, was the precise basis of Blanchard's earlier suit in the Florida state court and the grounds upon which he obtained the injunction against the merger of Commonwealth and Florida Exploration Company. The only difference is the new claim for damages.

■ There is no question but that Blanchard could have asserted this claim for damages in the Florida state suit. See Brown v. Solary, 1896, 37 Fla. 102, 19 So. 161. In addition, the new Florida Rules of Civil Procedure have eliminated the difference between law and equity in the form of pleadings, see 30 F.S.A. Rule 1.8(a), and would seem to contemplate the bringing of all legal and equitable claims arising from a single transaction in one suit. The very fact that the anti-suit injunction was issued indicates Florida's concern that parties not split a single injury into as many causes of action as the technicalities of the law may allow, and pursue them in different courts, asking different types of relief. No court can be sure it is giving a just

decree when piecemeal relief is coming in from other jurisdictions. Much of the damage which Blanchard now claims may have arisen *after* the filing of the Florida suit in March 1954 but before the decree in September 1958. However, here again, 30 F.S.A. Rule 1.15(b) provides for the filing of supplementary pleadings to cover events taking place after the filing of the original complaint, which may include a prayer for any necessary new relief. See Gracy v. Fielding, 1922, 83 Fla. 386, 91 So. 373. But instead of taking advantage of these liberal Florida rules of pleading, Blanchard chose to go into a foreign jurisdiction, having no connection with the events at issue, and file still another suit in the long history of litigation over the Blanchard Concession. To stop such a vexatious suit when all matters pertaining to the new suit were already before the state court and all the prayed for relief granted, the state court issued the injunction against further prosecution of this suit and the relitigation of these issues.

It has long been recognized that equity courts have the power under the proper equitable circumstances to enjoin parties within their jurisdiction from prosecuting actions in a foreign jurisdiction, and the Supreme Court has upheld this power in state courts. Cole v. Cunningham, 1890, 133 U.S. 107, 116–17, 10 S.Ct. 269, 33 L.Ed. 538; see Annotation on Injunctive Relief Against Oppressive Suits in Foreign Jurisdictions, 1951, 12 F.R.D. 502. Here, there is the added factor that Blanchard was already litigating before the state court issuing the injunction. Although the Supreme Court more recently denied state courts the power to enjoin parties in the federal court when they were pursuing a federal cause of action, it reasserted in dictum the existence of this state power when based on interests properly belonging to that court. Baltimore & O. R. Co. v. Kepner, 1941, 314 U.S. 44, 51–52, 62 S.Ct. 6, 86 L.Ed. 28. We feel that the Florida state court has properly asserted such interests in this case. Since Blanchard chose to ignore the Florida appellate procedures to test the extent of these interests or any other equities supporting his course of action, we will not allow a collateral attack upon the injunction here.

We therefore hold that the district court should have given cognizance to the Florida injunction and dismissed the complaint on the ground of comity without reaching res judicata or any other issue going to the merits of the claim. The judgment is therefore modified so as to show that the dismissal is based on comity because of the injunction issued by the Florida state court, and as modified the judgment is affirmed.

Modified and affirmed.