**CITY OF DALLAS et al., Relators,**

v.

**Honorable Dick DIXON, Chief Justice, et al., Respondents.**

No. A–9340.

Supreme Court of Texas.

March 13, 1963.

H. P. Kucera, City Atty., Dallas, N. Alex Bickley, Asst. City Atty., Will Wilson, Atty. Gen., Austin, Howard Mays, Asst. Atty. Gen., McCall, Parkhurst, Crowe, McCall & Horton, Ritchie, Ritchie & Crossland, Carrington, Johnson & Stephens, Dallas, for relators.

James P. Donovan, Dallas, for respondents.

CALVERT, Chief Justice.

When irrelevant and immaterial matters are eliminated from this direct proceeding in this Court, only two ultimate questions remain for determination: 1. Has this Court jurisdiction to issue a writ of mandamus to a Court of Civil Appeals requiring it, in a proper case, to issue all writs necessary to prevent prosecution of a suit in which the plaintiffs, bound by a prior judgment of the Court of Civil Appeals, seek to relitigate issues which were determined by the prior judgment? 2. If so, does the record before us present a case in which our jurisdiction to issue the writ of mandamus should be exercised?

The City of Dallas and its officials filed a proceeding in the Court of Civil Appeals for the Fifth Supreme Judicial District, sitting at Dallas, in which they sought the issuance of a writ of prohibition to prohibit the prosecution by the plaintiffs and their attorney of Civil Action No. 9276, styled Daniel C. Brown et al. v. City of Dallas et al., pending on the docket of the United States District Court for the Northern District of Texas, Dallas Division, and to direct their dismissal of the case. The writ of prohibition was sought on the ground that the plaintiffs in Brown v. City of Dallas are attempting to relitigate issues determined by a final judgment of the Court of Civil Appeals for the Fifth District in Atkinson et al. v. City of Dallas et al., 353 S.W.2d 275, writ refused, no reversible error. The Court of Civil Appeals denied the relief sought 362 S.W.2d 372. The court's judgment is not reviewable by appeal or writ of error. City of Houston v. City of Palestine, 114 Tex. 306, 267 S.W. 663.

The City of Dallas and its officials now seek a writ of mandamus from this Court directing the Court of Civil Appeals for the Fifth District, and the individual Justices of that court, to issue a writ of prohibition as there prayed for.

Before discussing the two questions posed at the beginning of this opinion, we dispose of two matters which we regard as irrelevant and immaterial.

■ Respondents urge that relators are not entitled to relief from the Court of Civil Appeals because they seek relief only against the plaintiffs and their attorney in Brown v. City of Dallas and ask only for a writ of prohibition; that writs of prohibition issue to courts and not to litigants. Technically speaking, that is correct, City of Houston v. City of Palestine, 114 Tex. 306, 267 S.W. 663; Lowe and Archer, Injunctions and Other Extraordinary Remedies, p. 482, § 511; High, A Treatise on Extraordinary Legal Remedies, pp. 603–604, § 762; 42 Am.Jur. 139–140, 150–151, Prohibition, §§ 2, 3, 11, although the true function of the writ is often overlooked. See Humble Oil & Refining Co. v. Fisher, 152 Tex. 29, 253 S.W.2d 656. However, incorrect identity of the writ sought is of no significance. Relators seek from the Court of Civil Appeals a writ directing the plaintiffs and their attorney to desist from further prosecution of Brown v. City of Dallas in the United States District Court. If they are entitled to that relief, necessary and proper writs, by whatever names they may be called, should be issued.

■ Relators suggest in their brief that inasmuch as this Court refused writ of error, no reversible error, in Atkinson v. City of Dallas, the judgment of the Court of Civil Appeals in that case is a judgment of this Court which this Court may enforce by issuing writs to the plaintiffs and their attorney in Brown v. City of Dallas. The judgment of the Court of Civil Appeals in Atkinson v. City of Dallas is not a judgment of this Court. A judgment of a Court of Civil Appeals becomes a judgment of this Court when writ of error is granted for review of the judgment and it is affirmed. Houston Oil Co. of Texas v. Village Mills Co., 123 Tex. 253, 71 S.W.2d

1087. But when writ of error for review of a Court of Civil Appeals' judgment is "Refused" or "Refused, No Reversible Error," this Court simply refuses to grant writ of error for the purpose of reviewing the judgment. City of Palestine v. City of Houston, Tex.Civ.App., 262 S.W. 215, 220, writ dismissed, 114 Tex. 306, 267 S.W. 663.

We now consider whether this Court has jurisdiction to issue a writ of mandamus to a Court of Civil Appeals requiring it, in a proper case, to issue all writs necessary to prevent prosecution of a suit in which the plaintiffs, bound by a prior judgment of the Court of Civil Appeals, seek to relitigate issues which were determined by the prior judgment.

■ It is clear that the Supreme Court has jurisdiction to issue a writ of mandamus to a Court of Civil Appeals to compel it to perform a mandatory duty. Simpson v. McDonald, 142 Tex. 444, 179 S.W.2d 239. Jurisdiction is conferred by Article 1733 [1] which authorizes the Supreme Court in original proceedings to issue "writs of * * * mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Civil Appeals or judges thereof, * * *." Legislative authority for enactment of the statute is found in Sec. 3, Art. V of the Constitution, Vernon's Ann.St.

■ Sec. 6, Art. V of the Constitution confers jurisdiction in particular matters on the Courts of Civil Appeals, and provides: "Said Courts shall have such other jurisdiction, original and appellate as may be prescribed by law." By the enactment of Art. 1823 the Legislature has provided: "Said courts [Courts of Civil Appeals] and the judges thereof may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts." Interference with enforcement of a court's judgment is interference with its jurisdiction, and the quoted constitutional and statutory provisions confer jurisdiction on

---

1. All Article references are to Vernon's Annotated Texas Civil Statutes.

Courts of Civil Appeals to issue whatever writs are necessary, including the writ of injunction, to enforce their judgments. Long v. Martin, 116 Tex. 135, 287 S.W. 494; Cattlemens Trust Co. of Fort Worth v. Willis, Tex.Civ.App., 179 S.W. 1115; Nash v. Hanover Fire Ins. Co., Tex.Civ.App., 79 S.W.2d 182. But recognition that such jurisdiction exists does not furnish a complete answer to our problem.

■ Conferral of jurisdiction on a court to do a given act invests it with power to do the act, Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641; but whether the act is to be done may be either discretionary or mandatory. When exercise of the power is discretionary, its exercise may not be compelled by a superior court. When exercise of the power is mandatory, it may and should be compelled. It follows that whether this Court may and should issue a writ of mandamus to a Court of Civil Appeals to compel it to enforce one of its judgments must turn on whether enforcement of the judgment is merely a discretionary right or is a mandatory duty of the court.

Generally speaking, enforcement of a judgment by the court which renders it, trial or appellate, is a duty. If a judgment is not enforced, the successful litigant has accomplished nothing; he has his victory but is denied its fruits. Judgments are rendered for the purpose of settling disputes between the parties to it; they are not to be nullified by either passive nonobservance or active interference. This does not mean, however, that it is the duty of an appellate court to exercise its original jurisdiction to enforce its judgments in every case. When an adequate remedy is otherwise available to a holder of rights under an appellate court judgment, the court which rendered it may, in its discretion, decline to exercise its original jurisdiction.

■ One in whose favor an appellate court judgment has been rendered has an adequate remedy to bar a second suit which seeks only to relitigate the issues between the parties, or their privies, and which does not otherwise interfere with enforcement of the prior judgment or with the rights of the parties springing from it. The remedy lies in the trial court in the defensive plea of res judicata; and the fact that the holder of rights under the prior judgment may be put to some trouble, delay and expense in defending the second suit does not render his remedy so inadequate as to require intervention by the appellate court through exercise of its original jurisdiction to enforce its judgment in the first suit. Milam County Oil Mill Co. v. Bass, 106 Tex. 260, 163 S.W. 577; Brazos River Conservation and Reclamation Dist. v. Belcher, 139 Tex. 368, 163 S.W.2d 183; Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648, 85 A.L.R.2d 1. If the rule were otherwise, the defense of res judicata to suits in trial courts would soon be abandoned in all instances involving appellate court judgments in favor of original proceedings in our appellate courts. The Supreme Court and Courts of Civil Appeals are primarily courts of review, and there is nothing in the constitutional and statutory provisions, or in our decisions, requiring them to exercise original jurisdiction to enforce their judgments when the same relief may be obtained relatively as expeditiously and inexpensively in the trial courts.

■ We should recognize, however, that a plea of res judicata as a defense to a second suit is not an adequate remedy for one holding rights under an appellate court judgment when an actual interference with enforcement of the judgment is coupled with the second suit, or when the mere filing and prosecution of the suit destroys the efficacy of the judgment. In such instances we conceive it to be the duty, as well as the right, of the appellate court to exercise its original jurisdiction to enforce its judgment.

The Supreme Court and the various Courts of Civil Appeals have been prompt to discharge their duty to prohibit the

prosecution of suits in which actual interference with enforcement of their judgments has been accomplished through ancillary writs issued by trial courts. Crouch v. McGaw, 134 Tex. 633, 138 S.W.2d 94; Cattlemens Trust Co. of Fort Worth v. Willis, Tex.Civ.App., 179 S.W. 1115; Nash v. McCallum, Tex.Civ.App., 74 S.W.2d 1046; Browning-Ferris Machinery Co. v. Thomson, Tex.Civ.App., 55 S.W.2d 168; Life Ins. Co. of Virginia v. Sanders, Tex. Civ.App., 62 S.W.2d 348. They have also been prompt to discharge their duty to prohibit the prosecution of suits which cloud title to real property when title has been settled by their prior judgments. Houston Oil Co. of Texas v. Village Mills Co., 123 Tex. 253, 71 S.W.2d 1087; Rio Bravo Oil Co. v. Hebert, 130 Tex. 1, 106 S.W.2d 242; Continental State Bank of Big Sandy v. Floyd, 131 Tex. 388, 114 S.W.2d 530; Humble Oil & Refining Co. v. Fisher, 152 Tex. 29, 253 S.W.2d 656; Yount-Lee Oil Co. v. Federal Crude Oil Co., Tex.Civ.App., 92 S.W.2d 493. It is obvious that in the latter type of case the mere filing and prosecution of the suit destroys the efficacy of the prior judgment.

There are instances in which the Supreme Court and the Courts of Civil Appeals have exercised their original jurisdiction to enforce their judgments by prohibiting the prosecution of second suits involving the same parties and issues when they were under no duty to do so. In most of such instances there was a taint of flagrant disregard of the appellate court judgment or an element of harassment and vexatious litigation. See Hovey v. Shepherd, 105 Tex. 237, 147 S.W. 224; Conley v. Anderson, Tex., 164 S.W. 985; Sparenberg v. Lattimore, 134 Tex. 671, 139 S.W. 2d 77; Nash v. Hanover Fire Ins. Co., Tex.Civ.App., 79 S.W.2d 182; Haskell National Bank of Haskell v. Ferguson, Tex.Civ.App., 155 S.W.2d 427; National Surety Corp. v. Jones, Tex.Civ.App., 158 S.W.2d 112; Ferguson v. Ferguson, Tex. Civ.App., 189 S.W.2d 442; City and County of Dallas v. Cramer, Tex.Civ.App.,

207 S.W.2d 918. In some reported instances there has been a declination to exercise jurisdiction to enforce prior judgments by prohibiting the prosecution of second suits when there was no duty to do so. Milam County Oil Mill Co. v. Bass, 106 Tex. 260, 163 S.W. 577; Brazos River Conservation and Reclamation Dist. v. Belcher, 139 Tex. 368, 163 S.W.2d 183. Declination is not usually reflected in a reported opinion; it is evidenced by an order denying permission to file an application for extraordinary writs.

We have written at some length on the first question in an effort to harmonize prior decisions and to delineate for bench and bar the situations in this area in which the issuance of extraordinary writs by appellate courts to enforce their judgments is discretionary and those in which issuance of such writs is a duty. We recognize that what we have said and held is, to some extent, in conflict with statements in other opinions. In Milam County Oil Mill Co. v. Bass, 106 Tex. 260, 163 S.W. 577, 578, we said that this Court was *without jurisdiction* to issue extraordinary writs to enforce its judgment when the only purpose of the writs was to prevent the prosecution of a suit "which makes no attempt to obstruct its [the judgment's] execution, but denies its conclusiveness upon what is alleged to be another cause of action." In Houston Oil Co. v. Village Mills Co., 123 Tex. 253, 71 S.W.2d 1087, 1089, although attempting to distinguish Bass, we said that this Court had jurisdiction to issue such writs as were necessary to enforce its judgment by prohibiting the prosecution of a second suit between the same parties, or their privies, if the second suit "directly involves the relitigation of rights established by the judgment, and is of such a nature that, if successfully prosecuted, will result in a judgment which will purport the divesting of those rights." In neither case did we deal with the problem discussed here, that is, whether the exercise of jurisdiction, once conceded, is discretionary or mandatory.

It is difficult to conceive of a case between the same parties and directly involving relitigation of rights established by a judgment, which, if successfully prosecuted, would *not* result in a judgment purporting the divesting of those rights. Even a take-nothing judgment in a personal injury damage suit would establish the right of the defendant not to pay; and a suit by the plaintiff to relitigate the issues, if successful, would result in a judgment divesting that right. We consider Village Mills and other cases, cited above, subsequent in point of time to Bass, to establish jurisdiction of this Court and the Courts of Civil Appeals to issue all writs necessary to prevent prosecution of a suit in which the plaintiffs, bound by a prior judgment of the court, seek to relitigate issues which were determined by the prior judgment. And we hold, further, that exercise of such jurisdiction is mandatory when an actual interference with enforcement of the judgment is coupled with the second suit or when the mere prosecution of the suit destroys the efficacy of the judgment.

Under the rule here announced, if Brown v. City of Dallas, now pending in the United States District Court, is, as relators allege, an effort by parties bound by the judgment in Atkinson v. City of Dallas to relitigate the issues finally determined by the Court of Civil Appeals in that case, it is the duty of the Court of Civil Appeals to enjoin further prosecution of Brown v. City of Dallas. At issue is the validity of certain revenue bonds, known as Love Field Revenue Bonds, sought to be issued and sold by the City of Dallas, and the use of funds derived from the sale for improvement of airport runways at Love Field. If the judgment of the Court of Civil Appeals in Atkinson v. City of Dallas finally adjudicated the validity of the bonds and the right of the City of Dallas to expend funds derived therefrom for improvements at Love Field, the mere prosecution of any subsequent suit attacking the validity of the bonds and the right so to expend their proceeds destroys the efficacy of that judg-

ment. Under the provisions of Section 3, Article 1269j–5, the authorizing statute, revenue bonds of this type cannot be finally issued until approved by the Attorney General, and the Attorney General does not approve issuance as long as their validity is under attack in pending litigation. The mere filing and prosecution of the Brown suit is as effective to prevent enjoyment of the rights fixed by the prior Atkinson judgment as an injunction to prevent sale of the bonds would be.

The Court of Civil Appeals denied the relief sought by relators on the ground that it had no jurisdiction to grant it. Therefore, that court did not reach the question of whether the plaintiffs in Brown v. City of Dallas were bound by the Atkinson judgment and were seeking to relitigate issues foreclosed by that judgment. We are convinced by an examination of the pleadings in the two cases that they are.

Forty-three persons joined as plaintiffs in filing and prosecuting Atkinson v. City of Dallas. The suit was filed as a class action. The plaintiffs alleged that they were resident taxpayers of the City and County of Dallas and owners of homes and real property therein. They stated that included in the class which they represented were "the home owners, families and individuals who live, work, reside and attend schools, churches and other community centers in the area embraced within the approach areas of the planned runway," and that the persons constituting the class they represented numbered in the thousands making it impracticable to bring them before the Court. The plaintiffs sought a permanent injunction against issuance of the Love Field Revenue Bonds and against the building of an extended runway at Love Field.

The petition in Atkinson tendered many reasons why the injunction sought should issue. We will not review them in detail. Generally, it was alleged that all state statutes which purported to authorize issuance of the bonds were unconstitutional and

void; that the bonds themselves were void because (1) not authorized by vote of the qualified voters, (2) they created a debt of the City of Dallas without compliance with constitutional requirements and in excess of that allowed by the charter of the City of Dallas, and (3) they constituted a lending of credit to individuals and corporations without the two-thirds vote of taxpayers required by Sec. 52, Art. III of the Constitution. Generally, it was alleged that the building of the runway violated Amendments V and XIV of the Constitution of the United States and Sec. 17, Art. I of the Constitution of Texas in that it would constitute a taking of their air-space without due process of law and denied them equal protection of the laws; that the proposed runway did not comply with Federal regulations as required by state statute; that the noise, smoke and danger from low-flying planes using the runway would disturb the quiet enjoyment of their properties and institutions, diminish the value of their properties and endanger their lives and health; that the establishment and use of the runway would create a public nuisance, and that the action of the City in constructing the runway was ultra vires and arbitrary.

■ All of these issues and all subsidiary issues raised by the pleadings but not here mentioned, as well as all issues which by diligence could have been raised and tried, were determined and foreclosed against the plaintiffs by the judgment of the Court of Civil Appeals affirming summary judgment against them in Atkinson v. City of Dallas. Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 47 Am.St.Rep. 79; Ogletree v. Crates, Tex., 363 S.W.2d 431. The fact that this Court refused writ of error, "No Reversible Error," in Atkinson does not indicate otherwise. It is the judgment of the Court of Civil Appeals, not its opinion, which brings the rule of res judicata into play. The notation, "Writ Refused. No Reversible Error," casts not the slightest cloud on a judgment of a Court of Civil Appeals. Rule 483, Texas Rules of Civil Procedure.

Respondents assert that the judgment in Atkinson is not res judicata of the issues in Brown because neither the parties nor the issues are the same.

■ Brown v. City of Dallas was filed by one hundred twenty-two persons, thirty of whom were plaintiffs in the Atkinson case. Others than the City of Dallas were made defendants, i. e., City officials, the Attorney General of Texas, certain securities dealers and their attorneys, and certain owners of bonds already sold. The suit does not purport to be a class action, but the plaintiffs are all described as "taxpayers of the City of Dallas, Texas, and the owners of homes situated within the approach areas of existing and proposed runways at Love Field."

■ It is immaterial that Brown is not a class action. The controlling fact is that Atkinson was a class action as authorized by Rule 42, Texas Rules of Civil Procedure; and being a class action of a hybrid type, the judgment in Atkinson binds all members of the class insofar as validity of the bonds and the right of the City to construct the runways are concerned if the class was adequately represented by those who sued on behalf of the class. McDonald, Texas Civil Practice, Vol. 1, § 3.37, pp. 283–284; Hovey v. Shepherd, 105 Tex. 237, 147 S.W. 224. The description of the plaintiffs in Brown, quoted above, shows clearly that they are members of the class represented by the plaintiffs in Atkinson, and it is not suggested that they were not adequately represented in that suit. Their right to relitigate the same issues is foreclosed by our decision in Hovey v. Shepherd, supra. This must be so. If it were not so, different groups of Dallas citizens could halt all efforts of the City to improve its airport facilities indefinitely by filing new suits. Such an absurdity cannot be tolerated.

An analysis of the petition in Brown discloses that the issues sought to be litigated are essentially the same as the issues litigated in Atkinson, and the prayer is for the same ultimate relief. Such additional collateral issues as are injected in Brown could, by diligence, have been litigated in Atkinson. They are, therefore, also foreclosed by the judgment in Atkinson.

■ We conclude that it is the duty of the Court of Civil Appeals for the Fifth Supreme Judicial District to enforce its judgment in Atkinson v. City of Dallas by issuing whatever writs are necessary and effective to restrain the plaintiffs and their attorney in Brown v. City of Dallas from further prosecution of that suit. That action will no more invade or trench upon the jurisdiction of the United States District Court than did the injunction issued in University of Texas v. Morris, 162 Tex. 60, 344 S.W.2d 426. See also: Moton v. Hull, 77 Tex. 80, 13 S.W. 849, 8 L.R.A. 722; 28 Am.Jur. 737, Injunctions, § 229. The Court of Civil Appeals may not, however, order or direct dismissal of Brown v. City of Dallas. A suit cannot be dismissed from the docket of a court without an order of the court; and any writ directing dismissal of Brown v. City of Dallas would invade the jurisdiction of the United States District Court to control its own docket.

There is indication in the history of this matter that it has reached the point of vexatious and harassing litigation. If the Court of Civil Appeals concludes that other suits to relitigate the same issues may be filed by other members of the class bound by the judgment in Atkinson, that court may, upon proper allegations and prayer, enjoin the filing of such suits by other members of the class.

We are satisfied that the Court of Civil Appeals will honor this opinion and will grant all necessary and proper writs for the enforcement of its judgment in Atkinson v. City of Dallas. Writ of mandamus will issue only if it should fail or refuse to do so.