377 U.S. 408 (1964)
DONOVAN ET AL.
v.
CITY OF DALLAS ET AL.
No. 264.
Supreme Court of United States.
Argued April 22, 1964.
Decided June 8, 1964.
CERTIORARI TO THE SUPREME COURT OF TEXAS AND THE COURT OF CIVIL APPEALS OF TEXAS, FIFTH SUPREME JUDICIAL DISTRICT.
James P. Donovan argued the cause and filed a brief for petitioners.
H. P. Kucera argued the cause for respondents. With him on the brief were Charles S. Rhyne, Brice W. Rhyne and Alfred J. Tighe, Jr.
MR. JUSTICE BLACK delivered the opinion of the Court.
The question presented here is whether a state court can validly enjoin a person from prosecuting an action in personam in a district or appellate court of the United States which has jurisdiction both of the parties and of the subject matter.
The City of Dallas, Texas, owns Love Field, a municipal airport. In 1961, 46 Dallas citizens who owned or had interests in property near the airport filed a class suit in a Texas court to restrain the city from building an additional runway and from issuing and selling municipal *409 bonds for that purpose. The complaint alleged many damages that would occur to the plaintiffs if the runway should be built and charged that issuance of the bonds would be illegal for many reasons. The case was tried, summary judgment was given for the city, the Texas Court of Civil Appeals affirmed,[1] the Supreme Court of Texas denied review, and we denied certiorari.[2] Later 120 Dallas citizens, including 27 of the plaintiffs in the earlier action, filed another action in the United States District Court for the Northern District of Texas seeking similar relief. A number of new defendants were named in addition to the City of Dallas, all the defendants being charged with taking part in plans to construct the runway and to issue and sell bonds in violation of state and federal laws. The complaint sought an injunction against construction of the runway, issuance of bonds, payment on bonds already issued, and circulation of false information about the bond issue, as well as a declaration that all the bonds were illegal and void. None of the bonds would be approved, and therefore under Texas law none could be issued, so long as there was pending litigation challenging their validity.[3] The city filed a motion to dismiss and an answer to the complaint in the federal court. But at the same time the city applied to the Texas Court of Civil Appeals for a writ of prohibition to bar all the plaintiffs in the case in the United States District Court from prosecuting their case there. The Texas Court of Civil Appeals denied relief, holding that it was without power to enjoin litigants from prosecuting an action in a federal court and that the defense of res judicata on which the city relied could be raised and adjudicated in the United States District *410 Court.[4] On petition for mandamus the Supreme Court of Texas took a different view, however, held it the duty of the Court of Civil Appeals to prohibit the litigants from further prosecuting the United States District Court case, and stated that a writ of mandamus would issue should the Court of Civil Appeals fail to perform this duty.[5] The Court of Civil Appeals promptly issued a writ prohibiting all the plaintiffs in the United States District Court case from any further prosecution of that case and enjoined them "individually and as a class . . . from filing or instituting . . . any further litigation, lawsuits or actions in any court, the purpose of which is to contest the validity of the airport revenue bonds . . . or from in any manner interfering with . . . the proposed bonds . . . ." The United States District Court in an unreported opinion dismissed the case pending there. Counsel Donovan, who is one of the petitioners here, excepted to the dismissal and then filed an appeal from that dismissal in the United States Court of Appeals for the Fifth Circuit. The Texas Court of Civil Appeals thereupon cited Donovan and the other United States District Court claimants for contempt and convicted 87 of them on a finding that they had violated its "valid order."[6] Donovan was sentenced to serve 20 days in jail, and the other 86 were fined $200 each, an aggregate of $17,200. These penalties were imposed upon each contemner for having either (1) joined as a party plaintiff in the United States District Court case; (2) failed to request and contested the dismissal of that case; (3) taken exceptions to the dismissal preparatory to appealing to the Court of Appeals; or (4) filed a separate action in the Federal District Court seeking to enjoin the Supreme Court of Texas from interfering with *411 the original federal-court suit. After the fines had been paid and he had served his jail sentence,[7] counsel Donovan appeared in the District Court on behalf of himself and all those who had been fined and moved to dismiss the appeal to the United States Court of Appeals. His motion stated that it was made under duress and that unless the motion was made "the Attorney for Defendant City of Dallas and the Chief Judge of the Court of Civil Appeals have threatened these Appellants and their Attorney with further prosecution for contempt resulting in additional fines and imprisonment." The United States District Court then dismissed the appeal.[8]
We declined to grant certiorari to review the United States District Court's dismissal of the case before it or its dismissal of the appeal brought on by the state court's coercive contempt judgment, but we did grant certiorari to review the State Supreme Court's judgment directing the Civil Court of Appeals to enjoin petitioners from prosecuting their action in the federal courts and also granted certiorari to review the Civil Court of Appeals' judgment of conviction for contempt. 375 U. S. 878. We think the Texas Court of Civil Appeals was right in its first holding that it was without power to enjoin these litigants from prosecuting their federal-court action, and we therefore reverse the State Supreme Court's judgment upsetting that of the Court of Appeals. We vacate the later contempt judgment of the Court of Civil Appeals, *412 which rested on the mistaken belief that the writ prohibiting litigation by the federal plaintiffs was "valid."
Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings.[9] That rule has continued substantially unchanged to this time. An exception has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem. In such cases this Court has said that the state or federal court having custody of such property has exclusive jurisdiction to proceed. Princess Lida v. Thompson, 305 U. S. 456, 465-468. In Princess Lida this Court said "where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." Id., at 466. See also Kline v. Burke Construction Co., 260 U. S. 226. It may be that a full hearing in an appropriate court would justify a finding that the state-court judgment in favor of Dallas in the first suit barred the issues raised in the second suit, a question as to which we express no opinion. But plaintiffs in the second suit chose to file that case in the federal court. They had a right to do this, a right which is theirs by reason of congressional enactments passed pursuant to congressional policy. And whether or not a plea of res judicata in the second suit would be good is a question for the federal court to decide. While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances,[10] it has in no way relaxed the old and well-established judicially declared *413 rule[11] that state courts are completely without power to restrain federal-court proceedings in in personam actions like the one here. And it does not matter that the prohibition here was addressed to the parties rather than to the federal court itself. For the heart of the rule as declared by this Court is that:
". . . where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. . . . The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."[12]
Petitioners being properly in the federal court had a right granted by Congress to have the court decide the issues they presented, and to appeal to the Court of Appeals from the District Court's dismissal. They have been punished both for prosecuting their federal-court case and for appealing it. They dismissed their appeal because of threats to punish them more if they did not do so. The legal effect of such a coerced dismissal on their appeal is not now before us, but the propriety of a state court's punishment of a federal-court litigant for pursuing his right to federal-court remedies is. That right was granted by Congress and cannot be taken away by the State. The Texas courts were without power to *414 take away this federal right by contempt proceedings or otherwise.[13]
It is argued here, however, that the Court of Civil Appeals' judgment of contempt should nevertheless be upheld on the premise that it was petitioners' duty to obey the restraining order whether that order was valid or invalid. The Court of Civil Appeals did not consider or pass upon this question, but acted on the assumption that petitioners were guilty of "willful disobedience of a valid order." 368 S. W. 2d, at 244. (Emphasis supplied.) Since we hold the order restraining petitioners from prosecuting their case in the federal courts was not valid, but was invalid, petitioners have been punished for disobeying an invalid order. Whether the Texas court would have punished petitioners for contempt had it known that the restraining order petitioners violated was invalid, we do not know. However, since that question was neither considered nor decided by the Texas court, we leave it for consideration by that court on remand. We express no opinion on that question at this time.
The judgment of the Texas Supreme Court is reversed, the judgment of the Texas Court of Civil Appeals is vacated, and the case is remanded to the Court of Civil Appeals for further proceedings not inconsistent with this opinion.
It is so ordered.
MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK and MR. JUSTICE STEWART join, dissenting.
The question presented by this case is not the general one stated by the Court at the outset of its opinion, but *415 a much narrower one: May a state court enjoin resident state-court suitors from prosecuting in the federal courts vexatious, duplicative litigation which has the effect of thwarting a state-court judgment already rendered against them? Given the Texas Supreme Court's finding, amply supported by the record and in no way challenged by this Court, that this controversy "has reached the point of vexatious and harassing litigation," 365 S. W. 2d 919, 927,[1] I consider both the state injunction and the ensuing contempt adjudication to have been perfectly proper.

I.
The power of a court in equity to enjoin persons subject to its jurisdiction from conducting vexatious and harassing litigation in another forum has not been doubted until now. In Cole v. Cunningham, 133 U. S. 107, 111, this Court affirmed "a decree of the Supreme Judicial Court of Massachusetts, restraining citizens of that commonwealth from the prosecution of attachment suits in New York, brought by them for the purpose of evading the laws of their domicil . . . ." The Court stated:
"The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and *416 under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act, in pais, or the institution or the prosecution of an action in a foreign court, is well settled." Id., at 116-117.
The Court quoted with approval the following passage from Mr. Justice Story's Equity Jurisprudence, Vol. II (10th ed. 1870), 89: "It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require; and with that view to order them to take, or to omit to take, any steps and proceedings in any other court of justice, whether in the same country, or in any foreign country."[2]Id., at 119. See also Simon v. Southern R. Co., 236 U. S. 115.
This Court, in 1941, expressly recognized the power of a state court to do precisely what the Texas court did here. In Baltimore & Ohio R. Co. v. Kepner, 314 U. S. 44, 51-52, the Court, although denying the state court's power to issue an injunction in that case, said:
"The real contention of petitioner is that, despite the admitted venue, respondent is acting in a vexatious and inequitable manner in maintaining the federal court suit in a distant jurisdiction when a convenient and suitable forum is at respondent's *417 doorstep. Under such circumstances, petitioner asserts power, abstractly speaking, in the Ohio court to prevent a resident under its jurisdiction from doing inequity. Such power does exist." (Footnote omitted; emphasis supplied.)
Mr. Justice Frankfurter, dissenting because of disagreement with the particular basis for the Court's refusal to give effect to the general principle, see infra, p. 418, observed that the opinion of the Court did "not deny the historic power of courts of equity to prevent a misuse of litigation by enjoining resort to vexatious and oppressive foreign suits," id., at 55,[3] and that the decision did not "give new currency to the discredited notion that there is a general lack of power in the state courts to enjoin proceedings in federal courts," id., at 56.
Apart from these express statements in both the majority and dissenting opinions, the Court's reasoning in the Baltimore & Ohio R. Co. case clearly implies a view contrary to the one taken by the majority here. Kepner, an injured employee of the railroad, filed suit against it in the District Court for the Eastern District of New York. The accident out of which his injuries arose occurred in Ohio, which was also the State in which he resided. Jurisdiction was based on the provision of the Federal Employers' Liability Act which permitted an employee to bring suit in a district in which the defendant was doing business.[4] The railroad brought a proceeding *418 in the Ohio state courts to enjoin Kepner from continuing to prosecute his suit in the federal court in New York. It argued that more appropriate state and federal courts were open and that the large cost to itself of defending the suit in a distant forum was needless. Deciding solely on the basis that the venue provisions of the Federal Employers' Liability Act gave an injured employee a privilege which state legislative or judicial action could not override, the Court denied the power of the Ohio courts to issue an injunction. Quite evidently, this basis of decision would have been meaningless unless it was presumed that in the absence of the venue provisions of the statute the Ohio court would have had power to enjoin. Nor is it even necessary to resort to this obvious inference. For the Court made it express: "As courts of equity admittedly possessed this power [to enjoin improper resort to the courts of a foreign jurisdiction] before the enactment of § 6 [of the F. E. L. A.] . . . ." Id., at 53. See also Blanchard v. Commonwealth Oil Co., 294 F. 2d 834, 841.
In light of the foregoing, there was no impropriety in the issuance of the state court's injunction in the present case.

II.
None of the cases on which the Court relies deals with, or in any way negatives, the power of a state court to enjoin federal litigation in circumstances such as those involved here. None of them was concerned with vexatious litigation.
The issue in McKim v. Voorhies, 7 Cranch 279 (ante, p. 412, note 9), was whether a state court could stay proceedings *419 on a federal court's judgment which had already been rendered when the state court acquired jurisdiction and which, therefore, involved no element of harassment at all. Similarly, in Diggs v. Wolcott, 4 Cranch 179 (cited ibid.), in which the position of the courts was in reverse, suit was first commenced in the state court. Riggs v. Johnson County, 6 Wall. 166 (ante, p. 413, note 11), resembled McKim, supra; it involved the power of a state court to issue an injunction which had the effect of preventing a federal court from enforcing its judgment, entered before the state court ever got its hands on the case. The other two cases which the Court cites with Riggs (ibid.) are the same and were decided on the authority of Riggs. Weber v. Lee County, 6 Wall. 210, 212; United States v. Council of Keokuk, 6 Wall. 514, 517.
Kline v. Burke Construction Co., 260 U. S. 226, 230 (ante, p. 412), held, with respect to state and federal courts, that "where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." The dictum from Princess Lida v. Thompson, 305 U. S. 456, 466, which the Court quotes (ante, p. 412), is to the same effect. In neither case is there any discussion of a court's power in equity to prevent persons subject to its jurisdiction from maintaining vexatious and harassing suits elsewhere. Moreover, the opinions in both cases explain the rule permitting state and federal courts to issue injunctions protective of their jurisdiction in in rem actionsa rule which the Court here does not question, see ante, p. 412on the ground that the rule is necessary to permit the court which first acquires jurisdiction over the subject matter of a controversy "effectively [to] exercise the jurisdiction vested in it . . . ," Princess Lida, supra, at 467. See Kline, supra, at 229. That reasoning is fully applicable here, since maintenance of the suit in *420 the federal court has the automatic effect of nullifying the Texas court's decree.
The Court cites three cases for the proposition that it is immaterial, for purposes of this case, that the Texas court's injunction runs to the parties rather than to the District Court. See ante, p. 413, note 12. None of them is apposite. In Peck v. Jenness, 7 How. 612, the question, as in Diggs, supra, was whether a federal court "was vested with any power or authority to oust" a state court of its properly established jurisdiction over a cause commenced in the state court long before any action was taken in the federal court. Id., at 624. Central National Bank v. Stevens, 169 U. S. 432, again involved a state court's attempt to enjoin private individuals from giving effect to the final decree of a federal court rendered before the suit was begun in the state court. Baltimore & Ohio R. Co. v. Kepner, supra, has already been discussed; it is expressly and by unmistakable implication directly contrary to the result now reached by the Court.
There can be no dispute, therefore, that all the weight of authority, including that of a recent pronouncement of this Court, is contrary to the position which the Court takes in this case. It is not necessary to comment on the Court's assertion, ante, p. 413, that the petitioners "had a right granted by Congress" to maintain their suit in the federal court, for that is the very question at issue. In any event, the statutory boundaries of federal jurisdiction are hardly to be regarded as a license to conduct litigation in the federal courts for the purpose of harassment.[5] *421 The exception which the Court recognizes for in rem actions demonstrates that no such view of federal jurisdiction is tenable; for in those cases, too, the federal courts have statutory jurisdiction to proceed.
In short, today's decision rests upon confusion between two distinct lines of authority in this Court, one involving vexatious litigation and the other not.
I would affirm.
NOTES
[1] Atkinson v. City of Dallas, 353 S. W. 2d 275 (Tex. Civ. App.).
[2] 370 U. S. 939.
[3] Vernon's Tex. Ann. Civ. Stat. Art. 1269j-5, § 3. See City of Dallas v. Dixon, 365 S. W. 2d 919, 925.
[4] City of Dallas v. Brown, 362 S. W. 2d 372 (Tex. Civ. App.).
[5] City of Dallas v. Dixon, 365 S. W. 2d 919.
[6] City of Dallas v. Brown, 368 S. W. 2d 240 (Tex. Civ. App.).
[7] While in jail counsel Donovan sought habeas corpus from both the Supreme Court of Texas and the United States Court of Appeals for the Fifth Circuit. Both courts denied relief without opinion.
[8] The District Court a week later dismissed as moot the action petitioners had brought in that court against the Supreme Court of Texas to enjoin the Texas court from interfering with the prosecution of the federal-court suit. Donovan v. Supreme Court of Texas, unreported. We denied certiorari sought to review that judgment. 375 U. S. 878.
[9] See, e. g., M`Kim v. Voorhies, 7 Cranch 279; Diggs v. Wolcott, 4 Cranch 179.
[10] See 28 U. S. C. § 2283; see also 28 U. S. C. § 1651.
[11] See, e. g., United States v. Council of Keokuk, 6 Wall. 514, 517; Weber v. Lee County, 6 Wall. 210; Riggs v. Johnson County, 6 Wall. 166, 194-196; M`Kim v. Voorhies, 7 Cranch 279.
[12] Peck v. Jenness, 7 How. 612, 625. See also Central National Bank v. Stevens, 169 U. S. 432; cf. Baltimore & O. R. Co. v. Kepner, 314 U. S. 44, 54, n. 23.
[13] In Baltimore & O. R. Co. v. Kepner, 314 U. S. 44, the Court did not reach the question before us, since the decision there was rested on the special venue provisions of the Federal Employers' Liability Act. See 36 Stat. 291, as amended, 45 U. S. C. § 56.
[1] Under Texas law, the mere filing of suit in the Federal District Court prevented the issuance of bonds to finance construction at Love Field, the Dallas municipal airport. The city's right to issue such bonds had been upheld in Atkinson v. City of Dallas, 353 S. W. 2d 275, a case which both the Supreme Court of Texas and this Court (370 U. S. 939) declined to review. As found by the Supreme Court of Texas, "an analysis of the petition in Brown [the District Court case] discloses that the issues sought to be litigated are essentially the same as the issues litigated in Atkinson, and the prayer is for the same ultimate relief." 365 S. W. 2d, at 927. In an oral opinion dismissing the action in the Federal District Court, the district judge found the same thing, stating: "In my opinion there is no justiciable issue to be presented in the Federal court case. All the issues have been decided in the Atkinson case."
[2] In the next sentence, Story stated that there was an exception to this doctrine, based "upon peculiar grounds of municipal and constitutional law"; state courts could not enjoin proceedings in federal courts and vice versa. Ibid. It is apparent from the cases cited to support this exception that Story had in mind the kind of situation presented in cases like those relied on by the present majority, which, as will be shown in Part II of this opinion, infra, pp. 418-421, deal not with injunctions to prevent vexatious litigation but with injunctions issued in very different contexts. See id., at 89, notes 2-4.
[3] Many decisions of the state courts have recognized this equitable power. See, e. g., O'Haire v. Burns, 45 Colo. 432, 101 P. 755; Royal League v. Kavanagh, 233 Ill. 175, 84 N. E. 178; Oates v. Morningside College, 217 Iowa 1059, 252 N. W. 783; Pere Marquette Railway v. Slutz, 268 Mich. 388, 256 N. W. 458; Wilser v. Wilser, 132 Minn. 167, 156 N. W. 271.
[4] "Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States." Act of April 5, 1910, 36 Stat. 291, as amended, 45 U. S. C. § 56.
[5] As the cases cited in Part II of this opinion illustrate, this Court's power to review judgments of the state courts is available to prevent interference with the legitimate invocation of federal jurisdiction. The parallel development of the two distinct lines of cases which are now confused for the first time itself demonstrates that the possibility of abuse in some cases is no ground for denying altogether the traditional equitable power to prevent improper resort to the courts.