Mr. Justice Harlan,
whom Mr. Justice Clark and Mr. Justice Stewart join,
dissenting.
The question presented by this case is not the general one stated by the Court at the outset of its opinion, but *547 a much narrower one: May a state court enjoin resident state-court suitors from prosecuting in the federal courts vexatious, duplicative litigation which has the effect of thwarting a state-court judgment already rendered against them? Given the Texas Supreme Court’s finding, amply supported by the record and in no way challenged by this Court, that this controversy “has reached the point of vexatious and harassing litigation,” 365 S. W. 2d 919, 927,[1] 1 consider both the state injunction and the ensuing contempt adjudication to have been perfectly proper.
I.
The power of a court in equity to enjoin persons subject to its jurisdiction from conducting vexatious and harassing litigation in another forum has not been doubted until now. In Cole v. Cunningham, 133 U. S. 107, 111, this Court affirmed “a decree of the Supreme Judicial Court of Massachusetts, restraining citizens of that commonwealth from the prosecution of attachment suits in New York, brought by them for the purpose of evading the laws of their domicil....” The Court stated:
“The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and *548 under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act, in pais, or the institution or the prosecution of an action in a foreign court, is well settled.” Id., at 116-117.
The Court quoted with approval the following passage from Mr. Justice Story’s Equity Jurisprudence, Yol. II (10th ed. 1870), 89: “It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require; and with that view to order them to take, or to omit to take, any steps and proceedings in any other court of justice, whether in the same country, or in any foreign country.” [2] Id., at 119. See also Simon v. Southern R. Co., 236 U. S. 115.
This Court, in 1941, expressly recognized the power of a state court to do precisely what the Texas court did here. In Baltimore & Ohio R. Co. v. Kepner, 314 U. S. 44, 51-52, the Court, although denying the state court’s power to issue an injunction in that case, said:
“The real contention of petitioner is that, despite the admitted venue, respondent is acting in a vexatious and inequitable manner in maintaining the federal court suit in a distant jurisdiction when a convenient and suitable forum is at respondent’s *549 doorstep. Under such circumstances, petitioner asserts power, abstractly speaking, in the Ohio court to prevent a resident under its jurisdiction from doing inequity. Such power does exist.” (Footnote omitted; emphasis supplied.)
Mr. Justice Frankfurter, dissenting because of disagreement with the particular basis for the Court’s refusal to give effect to the general principle, see infra, p. 418, observed that the opinion of the Court did “not deny the historic power of courts of equity to prevent a misuse of litigation by enjoining resort to vexatious and oppressive foreign suits,” id., at 55,[3] and that the decision did not “give new currency to the discredited notion that there is a general lack of power in the state courts to enjoin proceedings in federal courts,” id., at 56.
Apart from these express statements in both the majority and dissenting opinions, the Court’s reasoning in the Baltimore & Ohio R. Co. case clearly implies a view contrary to the one taken by the majority here. Kepner, an injured employee of the railroad, filed suit against it in the District Court for the Eastern District of New York. The accident out of which his injuries arose occurred in Ohio, which was also the State in which he resided. Jurisdiction was based on the provision of the Federal Employers’ Liability Act which permitted an employee to bring suit in a district in which the defendant was doing business.[4] The railroad brought a proceeding *550 in the Ohio state courts to enjoin Kepner from continuing to prosecute his suit in the federal court in New York. It argued that more appropriate state and federal courts were open and that the large cost to itself of defending the suit in a distant forum was needless. Deciding solely on the basis that the venue provisions of the Federal Employers’ Liability Act gave an injured employee a privilege which state legislative or judicial action could not override, the Court denied the power of the Ohio courts to issue an injunction. Quite evidently, this basis of decision would have been meaningless unless it was presumed that in the absence of the venue provisions of the statute the Ohio court would have had power to enjoin. Nor is it even necessary to resort to this obvious inference. For the Court made it express: “As courts of equity admittedly possessed this power [to enjoin improper resort to the courts of a foreign jurisdiction] before the enactment of § 6 [of the F. E. L. A.] . . . .” Id., at 53. See also Blanchard v. Commonwealth Oil Co., 294 F. 2d 834, 841.
In light of the foregoing, there was no impropriety in the issuance of the state court’s injunction in the present case.
II.
None of the cases on which the Court relies deals with, or in any way negatives, the power of a state court to enjoin federal litigation in circumstances such as those involved here. None of them was concerned with vexatious litigation.
The issue in McKim v. Voorhies, 7 Cranch 279 (ante, p. 412, note 9), was whether a state court could stay pro *551 ceedings on a federal court’s judgment which had already-been rendered when the state court acquired jurisdiction and which, therefore, involved no element of harassment at all. Similarly, in Diggs v. Wolcott, 4 Cranch 179 (cited ibid.), in which the position of the courts was in reverse, suit was first commenced in the state court. Riggs v. Johnson County, 6 Wall. 166 (ante, p. 413, note 11), resembled McKim, supra; it involved the power of a state court to issue an injunction which had the effect of preventing a federal court from enforcing its judgment, entered before the state court ever got its hands on the case. The other two cases which the Court cites with Riggs (ibid.) are the same and were decided on the authority of Riggs. Weber v. Lee County, 6 Wall. 210, 212; United States v. Council of Keokuk, 6 Wall. 514, 517.
Kline v. Burke Construction Co., 260 U. S. 226, 230 (ante, p. 412), held, with respect to state and federal courts, that “where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded.” The dictum from Princess Lida v. Thompson, 305 U. S. 456, 466, which the Court quotes (ante, p. 412), is to the same effect. In neither case is there any discussion of a court’s power in equity to .prevent persons subject to its jurisdiction from maintaining vexatious and harassing suits elsewhere. Moreover, the opinions in both cases explain the rule permitting state and federal courts to issue injunctions protective of their jurisdiction in in rem actions — a rule which the Court here does not question, see ante, p. 412 — on the ground that the rule is necessary to permit the court which first acquires jurisdiction over the subject matter of a controversy “effectively [to] exercise the jurisdiction vested in it . . . ,” Princess Lida, supra, at 467. See Kline, supra, at 229. That reasoning is fully applicable here, since maintenance of the suit in *552 the federal court has the automatic effect of nullifying the Texas court’s decree.
The Court cites three cases for the proposition that it is immaterial, for purposes of this case, that the Texas court’s injunction runs to the parties rather than to the District Court. See ante, p. 413, note 12. None of them is apposite. In Peck v. Jenness, 7 How. 612, the question, as in Diggs, supra, was whether a federal court “was vested with any power or authority to oust” a state court of its properly established jurisdiction over a cause commenced in the state court long before any action was taken in the federal court. Id., at 624. Central National Bank v. Stevens, 169 U. S. 432, again involved a state court’s attempt to enjoin private individuals from giving effect to the final decree of a federal court rendered before the suit was begun in the state court. Baltimore & Ohio R. Co. v. Kepner, supra, has already been discussed; it is expressly and by unmistakable implication directly contrary to the result now reached by the Court.
There can be no dispute, therefore, that all the weight of authority, including that of a recent pronouncement of this Court, is contrary to the position which the Court takes in this case. It is not necessary to comment on the Court’s assertion, ante, p. 413, that the petitioners “had a right granted by Congress” to maintain their suit in the federal court, for that is the very question at issue. In any event, the statutory boundaries of federal jurisdiction are hardly to be regarded as a license to conduct litigation in the federal courts for the purpose of harassment.[5] *553 The exception which the Court recognizes for in rem actions demonstrates that no such view of federal juris-, diction is tenable; for in those cases, too, the federal courts have statutory jurisdiction to proceed.
In short, today’s decision rests upon confusion between two distinct lines of authority in this Court, one involving vexatious litigation and the other not.
I would affirm.

 Under Texas law, the mere filing of suit in the Federal District Court prevented the issuance of bonds to finance construction at Love Field, the Dallas municipal airport. The city’s right to issue such bonds had been upheld in Atkinson v. City of Dallas, 353 S. W. 2d 275, a case which both the Supreme Court of Texas and this Court (370 U. S. 939) declined to review. As found by the Supreme Court of Texas, “an analysis of the petition in Brown [the District Court case] discloses that the issues sought to be litigated are essentially the same as the issues litigated in Atkinson, and the prayer is for the same ultimate relief.” 365 S. W. 2d, at 927. In an oral opinion dismissing the action in the Federal District Court, the district judge found the same thing, stating: “In my opinion there is no justiciable issue to be presented in the Federal court case. All the issues have been decided in the Atkinson case.”

 In the next sentence, Story stated that there was an exception to this doctrine, based "upon peculiar grounds of municipal and constitutional law”; state courts could not enjoin proceedings in federal courts and vice versa. Ibid. It is apparent from the cases cited to support this exception that Story had in mind the kind of situation presented in cases like those relied on by the present majority, which, as will be shown in Part II of this opinion, infra, pp. 418-421, deal not with injunctions to prevent vexatious litigation but with injunctions issued in very different contexts. See id., at 89, notes 2-4.

 Many decisions of the state courts have recognized this equitable power. See, e. g., O’Haire v. Burns, 45 Colo. 432, 101 P. 755; Royal League v. Kavanagh, 233 Ill. 175, 84 N. E. 178; Oates v. Morningside College, 217 Iowa 1059, 252 N. W. 783; Fere Marquette Railway v. Slutz, 268 Mich. 388, 256 N. W. 458; Wilser v. Wilser, 132 Minn. 167, 156 N. W. 271.

 “Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant *550 shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.” Act of April 5, 1910, 36 Stat. 291, as amended, 45 U. S. C. § 56.

 As the cases cited in Part II of this opinion illustrate, this Court’s power to review judgments of the state courts is available to prevent interference with the legitimate invocation of federal jurisdiction. The parallel development of the two distinct lines of cases which are now confused for the first time itself demonstrates that the possibility of abuse in some cases is no ground for denying altogether the traditional equitable power to prevent improper resort to the courts.