**CITY OF DALLAS et al., Petitioners,**

v.

**Daniel C. BROWN et al. and James P. Donovan, Atty., Respondents.**

**No. 16193.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 13, 1964.

H. P. Kucera, City Atty., and N. Alex Bickley, Asst. City Atty., Dallas, for petitioners.

James P. Donovan, Dallas, for respondents.

PER CURIAM.

This cause is before us on remand from the Supreme Court of the United States. Donovan et al. v. City of Dallas et al., 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), rehearing denied October 12, 1964. Our previous decision in this contempt action is found in City of Dallas v. Brown, Civ.App., (1964), 368 S.W.2d 240. Ante-

cedent facts and history may be found in Atkinson v. City of Dallas, Civ.App., 353 S.W.2d 275, certiorari denied, 370 U.S. 939, 82 S.Ct. 1587, 8 L.Ed.2d 808; City of Dallas v. Brown, Civ.App., 362 S.W.2d 372; and City of Dallas v. Dixon et al., S. Ct., 365 S.W.2d 919.

The Supreme Court of the United States has now said that we were correct in our decision in City of Dallas v. Brown, 362 S.W.2d 372, wherein we declined to prohibit respondents from prosecuting their federal court action. Accordingly, the court says that the judgment of the Supreme Court of Texas in City of Dallas v. Dixon et al., S.Ct., 365 S.W.2d 919 upsetting our judgment was incorrect. The Supreme Court of the United States reversed the judgment of the Supreme Court of Texas and vacated our judgment in City of Dallas v. Brown, Civ.App., 368 S.W.2d 240, in which we held respondents guilty of contempt. The highest court of the land says that our action rested on the mistaken belief that the writ prohibiting litigation by the federal plaintiffs was "valid". That court, in remanding the cause to us, said:

"Whether the Texas court would have punished petitioners [respondents here] for contempt had it known that the restraining order petitioners violated was invalid, we do not know. However, since that question was neither considered nor decided by the Texas court, we leave it for consideration by that court on remand. We express no opinion on that question at this time."

Thus, on this remand we are confronted with the primary question of whether we would have punished respondents for contempt had we known our restraining order was invalid. Should this question be answered in the negative then we are called upon to pass upon respondents' motion for the return to them of all fines and costs previously paid. Such motion poses the question as to our right under the law to order such fines and costs returned once they have been paid into court.

■ The answer to the first question is found in the opinion of the United States Supreme Court wherein we are advised that respondents had the legal right to prosecute their federal cause of action and that "the Texas courts were without power to take away this federal right by contempt proceedings or otherwise." At the time we issued the Writ of Prohibition and found respondents guilty of contempt for violating the provisions thereof we did not know that we did not possess this power. We had in effect been ordered by the Supreme Court of Texas to issue the writ and could not have disobeyed such order. It was a valid and legal order as to us until reversed or vacated by a higher court. At the time we acted no effort had been made to stay the judgment of the Supreme Court of Texas directing us to issue the Writ of Prohibition. So, in issuing the Writ of Prohibition and in holding respondents in contempt for violation thereof, we acted perforce what we considered to be a valid order. Accordingly, we now vacate our previous order issuing the Writ of Prohibition. The motion of the City of Dallas to hold respondents in contempt of court for violating the Writ of Prohibition is denied.

■ The answer to the second question posed presents a problem of ownership and accounting of the funds involved. Of the total number of respondents involved, fifty-nine paid their fines and costs of court. Another (Donovan) served his jail sentence and paid his pro rata share of the court costs. The total amount of fines paid by the fifty-nine respondents was $10,750. The total amount of court costs paid by all respondents was $136.80, making a total of $10,886.80 fines and costs collected from respondents. On May 30, 1963, following our order of contempt against respondents, we entered the following order:

"It appearing to the Court that certain Respondents in the above entitled

and numbered cause have paid, and likely will hereafter pay to the Clerk of this Court certain sums of money for fines and costs assessed against them for contempt of Court rendered and entered against them on May 22nd and 29th, 1963; and,

"It further appearing to the Court that there is yet some uncertainty as to the finality of the assessment of said fines and costs, and that it is advisable that said fines and costs already paid and hereafter paid be withheld from payment by the Clerk into the State Treasury until further orders of the Court:

"It is, therefore, ordered by the Court that the Clerk of this Court withhold payment into the State Treasury of all of said fines and costs already paid and hereafter paid until further orders of this Court."

Since this court, a constitutional court and a part of the judicial system of the State of Texas, may be considered to be an agency of the State of Texas the question was presented as to whether these funds may be released by us to the various respondents, or whether the money became the property of the State of Texas and may be returned only by action of the Legislature.

We invited the Attorney General of Texas to enter the case and, as the State's attorney, assist us in arriving at a proper answer to this question. The Attorney General of Texas has responded by both brief and oral argument. This chief legal officer of our state takes the position that there is no legal impediment to prevent us from remitting the fines and costs previously imposed. He further argues that a contempt proceeding is an extraordinary remedy peculiar to the court against which the offense has been committed, and one in which the offended court must necessarily retain a wide range of discretion and control until there is a final determination by such court. Until such time as this court

shall have deposited the funds into the State Treasury to the credit of the General Revenue Fund the Attorney General reasons that such money has not become "state money". He compares such funds held by us to the status of funds held by the Treasurer in a "suspense account" until every essential fact necessary to a proper disposition has been determined. 12 Tex.Jur.2d 518, § 42, Contempt, and cases there cited; 17 C.J.S. Contempt § 107, p. 291 and cases there cited; Daniel v. Richcreek, Civ.App. (1938), 118 S.W.2d 935.

In the state of this record we have concluded that we have the right and power to control these funds. Accordingly, we here and now order such fines and costs to be remitted to the respective respondents who have paid the same.

It is so ordered.